JAY CLAYTON
United States Attorney for the
Southern District of New York
By: JESSICA F. ROSENBAUM
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2777
Email: jessica.rosenbaum@usdoj.gov

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DANIEL FOSTER,<br><br>                    Plaintiff,<br><br>v.<br><br>TCC INTERNATIONAL LLC d/b/a CORE: CLUB; CORE CLUB MEMBERS CORP; and CORE: GRAVITY LLC,<br><br>                    Defendants. | 23 Civ. 10084 (MKV)<br><br><br><br><br><br><br>**COMPLAINT-IN-INTERVENTION OF THE UNITED STATES OF AMERICA**<br><br>**JURY TRIAL DEMANDED**<br><br>23 Civ. 10084 (MKV) |
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Intervenor,<br><br>v.<br><br>TCC INTERNATIONAL LLC, CORE GRAVITY LLC, and CORE CLUB MEMBERS CORP.,<br><br>                    Defendants. | |

Plaintiff the United States of America (the "United States" or the "Government"), by its attorney, Jay Clayton, the United States Attorney for the Southern District of New York, files this Complaint-in-Intervention against TCC International LLC ("TCC International"), Core Gravity LLC ("Core Gravity"), and Core Club Members Corp. (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil fraud action brought by the United States against Defendants to recover damages and civil penalties under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, in connection with Defendants' submission of fraudulent Paycheck Protection Program ("PPP") loan applications and loan forgiveness applications, as well as the submission of a fraudulent application for a grant under the Restaurant Revitalization Fund ("RRF"). The United States also seeks to recover damages under the common law for payment by mistake of fact and unjust enrichment.

2. Defendants, collectively, improperly received two loans totaling approximately $2.3 million from the PPP program, all but $514,176.45 of which was forgiven, and a $2.3 million grant from the RRF. As described in greater detail below, Defendants TCC International and Core Gravity (collectively, the "PPP Defendants") were ineligible to receive the two PPP loans because they intended to use the funds to operate a private membership club—an expressly prohibited use under the PPP. Notwithstanding this ineligibility, the PPP Defendants submitted or caused to be submitted loan applications that falsely certified the applicants' compliance with PPP requirements, and subsequently submitted or caused to be submitted improper requests for loan forgiveness because the applicants used the funds to pay employees of the private club. Defendant Core Club Members Corp. also falsely certified its eligibility for an RRF grant, despite the fact

that it was ineligible under RRF program rules because (i) on-site sales of food and beverages to the public did not comprise at least 33 percent of its gross receipts in 2019, as required, and (ii) it was a not-for-profit organization.

3. The PPP was a federal loan program overseen by the Small Business Administration ("SBA") to assist small businesses nationwide adversely impacted by the COVID-19 pandemic. Under the PPP, eligible businesses could obtain SBA-guaranteed loans to spend on payroll costs, rent or mortgage expenses, and other specified business expenses.

4. SBA's website contained information about the PPP rules (the "PPP Rules"), including eligibility criteria and it referenced 13 C.F.R. § 120.110, which identified certain businesses that were ineligible for PPP loans. Among those businesses deemed ineligible for PPP funding were "[p]rivate clubs and businesses which limit the number of memberships for reasons other than capacity." 13 C.F.R. § 120.110(i).

5. The RRF was established in March 2021 through the American Rescue Plan Act, to provide emergency assistance to qualifying restaurants and bars impacted by the COVID-19 pandemic. The RRF was administered by the SBA and provided eligible entities with grants equal to their pandemic-related loss, subject to a cap. The RRF grant application required the business, through its authorized representative, to acknowledge the RRF's rules (the "RRF Rules") and certify that it was eligible to obtain the RRF grant. The RRF Rules identified certain businesses that were ineligible for funding, including not-for-profit entities and restaurants or bars where on-site sales to the public comprised less than 33 percent of gross receipts in 2019.

6. Between April 2020 and April 2022 (the "Covered Period"), Defendants were all affiliated with and supported The Core Club 55th Street LLC ("Core Club 55th"), a private Manhattan-based social club. Specifically, TCC International was the entity responsible for payroll

costs associated with Core Club 55th, Core Club Members Corp. held Core Club 55th's liquor license, and Core Gravity operated Core Club 55th.

7. Nevertheless, TCC International LLC applied for and received more than $2.3 million in first and second-draw PPP loans, of which all but $514,176.45 was forgiven. TCC International listed itself as "TCC International LLC d/b/a Core Gravity" on the first-draw loan application and "TCC International LLC d/b/a The Core Club" on the second-draw PPP loan application. However, the forgiveness applications were submitted by Core Gravity (first-draw loan) and TCC International (second-draw loan).

8. TCC International LLC d/b/a Core Gravity and TCC International LLC d/b/a The Core Club, through their authorized representative Jennie Enterprise ("Authorized Representative"), certified in their PPP loan applications, among other things, that the applicants were eligible for PPP funding and that the funds would be used in accordance with the PPP Rules. Similarly, in the PPP loan forgiveness applications, the Authorized Representative for Core Gravity and TCC International certified, among other things, that the funds were used to pay business costs that were eligible for forgiveness. However, the PPP Defendants were ineligible for PPP loans because they intended to, and did, use the funds to operate a private club.

9. Core Club Members Corp. applied for and received an RRF grant of over $2.3 million. In the grant application, Core Club Members Corp., through its Authorized Representative, certified, among other things, that Core Club Members Corp. was eligible for funding and that the funds would be used in accordance with the RRF Rules. However, Core Club Members Corp. was not eligible for the RRF grant, both because it was a not-for-profit company, and because it did not serve food and drink to the public.

10. By engaging in the above-referenced conduct, Defendants violated the FCA by

4

knowingly presenting and making, or causing to be presented and made, false claims and statements to the SBA and the lenders acting on the SBA's behalf. As a result of these false claims and statements, Defendants improperly obtained millions of dollars in PPP and RRF funds.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the Government's FCA claims pursuant to 31 U.S.C. § 3730(a) and 28 U.S.C §§ 1331, 1345, and over the common law claims pursuant to 28 U.S.C. § 1345.

12. This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process.

13. Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) because Defendants are located in and transact business in this District.

## THE PARTIES

14. Plaintiff is the United States of America and is suing on its own behalf and on behalf of the SBA, which, among other things, administered the PPP and RRF.

15. Core Club Members Corp. is a New York not-for-profit corporation that during the Covered Period held Core Club 55th's liquor license. During the Covered Period, both Core Club Members Corp and Core Club 55th had operations at 66 E. 55th Street, New York, New York 10022. In or about October 2023, Core Club 55th moved to 711 Fifth Avenue, New York, New York 100022, and THE CORE CLUB: FIFTH AVE., INC ("Core Club 711") became the successor-in-interest to Core Club 55th, taking over Core Club 55th's operations.

16. TCC International LLC is a Delaware limited liability company that during the Covered Period was responsible for payroll costs associated with Core Club 55th. During the Covered Period, TCC International had operations at 66 E. 55th Street, New York, New York

10022. TCC International is currently responsible for payroll for the employees of Core Club 711.

17. Core Gravity LLC is a Delaware limited liability corporation that owns 100 percent of TCC International LLC. During the Covered Period, Core Gravity was located at 66 E. 55th Street, New York, New York 10022, and operated Core Club 55th.

18. Relator Daniel Foster ("Relator") is the founder of a legal technology company specializing in intellectual property theft detection and management. On or about November 16, 2023, Relator filed a complaint under the *qui tam* provisions of the FCA alleging, among other things, that Defendants submitted applications for PPP and RRF funding despite not qualifying for such funding.

**BACKGROUND**

**I.      The Paycheck Protection Program**

19. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the CARES Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

20. The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

21. Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program."[1]

---

[1] The 7(a) Loan Program is SBA's primary business loan program for providing financial assistance to small businesses. *See* SBA, *7(a) loans*, https://www.sba.gov/funding-

22. On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) became law and modified certain provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

23. Under the PPP, businesses were required to spend loan proceeds on payroll costs, rent or mortgage expenses, or other specified business expenses.

24. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) was required to sign and submit a PPP loan application online through the lender's application platform.

25. The PPP loan application required the business (through its authorized representative) to acknowledge the PPP Rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

26. For example, applicants for PPP loans were required to certify in their PPP applications, among other things, that:

    a. "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program";

    b. "All SBA loan proceeds will be used only for business-related purposes as

---

programs/loans/7a-loans (last accessed July 27, 2025). The program "provides loan guaranties to lenders that allow them to provide financial help for small businesses with special requirements." *Id.*

        specified in the loan application and consistent with the Paycheck Protection Rule"; and

    c.     "[T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

27.     Once the borrower submitted its PPP loan application to a lender, the participating lender processed the PPP loan application. If a PPP loan application was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

28.     Qualifying borrowers who exhausted the entirety of their first PPP loan on authorized uses were permitted to apply for a second-draw PPP loan. Like first-draw PPP loans, second-draw loans were calculated based on the applicant's average monthly payroll costs. As part of their second-draw applications, applicants were required to make the certifications set forth in ¶ 26.

29.     After the lender processed and approved a borrower's PPP loan application, the lender submitted to the SBA the "Lender's Application - Paycheck Protection Program Loan Guaranty," applying for a guarantee on the loan. In that application, the lender certified that the borrower had made the required certifications regarding its eligibility. Therefore, if a borrower made misrepresentations on its PPP loan application, the borrower's false certifications caused the lender to submit a loan guarantee application to the SBA that contained the borrower's false statement.

30.     The SBA provided for forgiveness of first- and second-draw PPP loans. To receive forgiveness, borrowers were required to submit signed loan forgiveness applications and

documents containing the information and certifications in SBA Form 3508, 3508EZ, or a third-party lender equivalent. The PPP loan forgiveness application required the business (through its authorized representative) to make certain other certifications in order to be eligible to obtain forgiveness for a PPP loan. For example, applicants for PPP loan forgiveness were required to certify in their PPP loan forgiveness applications, among other things, that:

    a.    "The dollar amount for which forgiveness is requested . . . was used to pay business costs that are eligible for forgiveness";

    b.    "[I]f the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges"; and

    c.    "The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects."

## II.  Restaurant Revitalization Fund

31. The Restaurant Revitalization Fund was established in March 2021 through the American Rescue Plan Act, with the goal of providing financial assistance to eligible restaurants and bars that had suffered economic losses because of the COVID-19 pandemic. Like the PPP, the RRF program was administered by the SBA.

32. The RRF program provided restaurants with funding equal to their pandemic-related revenue loss up to $10 million per business and no more than $5 million per physical location. Recipients were not required to repay the funds so long as they were used for eligible uses—such as payroll costs, rent, construction of outdoor seating, and utilities—by March 11, 2023.

33. To qualify for an RRF grant, a business needed to be one where "the public or

patrons assemble for the primary purpose of being served food and drink," and where "on-site sales to the public comprised at least 33% of gross receipts in 2019." *See* RRF Program Guide (Apr. 28, 2021) at 3, *available at* https://www.sba.gov/sites/default/files/2021-04/Restaurant%20Revitalization%20Fund%20Program%20Guide%20as%20of%204.28.21-508_0.pdf (last accessed July 27, 2025). Non-profit organizations were not eligible for funding. *Id.* at 5.

34. To apply for an RRF grant, a qualifying business signed and submitted an application (SBA Form 3172), which required the applicant to acknowledge the RRF Rules and make certain affirmative certifications, including that it was eligible for funding and that any false statement made in the application could result in, among other things, imprisonment and fines.

### III. The False Claims Act

35. The FCA establishes treble damages liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A); or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(1)(B).

36. "Knowingly" is defined to include actual knowledge, reckless disregard, and deliberate ignorance. *Id.* § 3729(b)(1). No proof of specific intent to defraud is required. *Id.*

37. In addition to treble damages, the FCA also provides for assessment of a civil penalty for each violation or each false claim.

## FACTUAL ALLEGATIONS

38. The PPP Defendants' PPP loan and forgiveness applications, and Core Club Members Corp.'s RRF grant application, were materially false because the PPP Defendants and Core Club Members Corp., respectively, falsely certified that their applications were true, accurate,

10

and in compliance with PPP and RRF Rules. Specifically, the PPP Defendants (i) falsely certified that they were eligible for two PPP loans despite the fact that they intended to use the loans to operate a private club that limited membership for reasons other than capacity; and (ii) improperly sought forgiveness for the two PPP loans despite having been ineligible to receive those loans in the first instance. Moreover, Core Club Members Corp. falsely certified its eligibility for an RRF grant despite being ineligible because on-site sales of food and beverages to the public did not comprise at least 33 percent of gross receipts in 2019 and, additionally, because Core Club Members Corp. was a not-for-profit entity.

39. Had the lenders and SBA known of Defendants' misrepresentations, they would not have approved the requested PPP loans and RRF grant. In addition, had SBA known of the PPP Defendants' misrepresentations, SBA would not have forgiven any of the first- or second-draw PPP loans. Thus, as a result of Defendants' fraud, Defendants collectively obtained millions of dollars in PPP and RRF funds to which they were not entitled.

I. **The PPP Defendants Submitted, or Caused to Be Submitted, Two Applications for PPP Loans and Applications for Forgiveness of the PPP Loans, Despite Not Qualifying for Receipt or Forgiveness of the Loans**

40. On April 20, 2020, the entity responsible for Core Club 55th's payroll costs during the Covered Period, TCC International LLC (under the name "TCC International LLC d/b/a Core Gravity" and using the employer identification number of Core Gravity, which operated Core Club 55th) submitted, through its Authorized Representative, an application to a financial institution for a first-draw PPP loan in the amount of $960,400 and received a PPP loan for the requested amount that same day (the "First PPP Loan").

41. In the application for the First PPP Loan (SBA Form 2483), the Authorized Representative certified that the applicant was "eligible to receive a loan under the rules in effect at the time th[e] application [was] submitted" and, further, that "[t]he funds will be used to retain

workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rules."

42. On March 31, 2021, TCC International LLC (under the name "TCC International LLC d/b/a The Core Club" and again using the employer identification number of Core Gravity) submitted, through its Authorized Representative, an application to a financial institution for a second-draw PPP loan in the amount of $1,344,675.50 and received a PPP loan for the requested amount that same day (the "Second PPP Loan").

43. In the application for the Second PPP Loan (SBA Form 2483-SD), the Authorized Representative again certified that the applicant was "eligible to receive a loan under the rules in effect at the time th[e] application [was] submitted" and, further, that "[t]he funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules."

44. On October 6, 2021, Core Gravity, through its Authorized Representative, applied for partial forgiveness on the First PPP Loan. In the forgiveness application, Core Gravity's Authorized Representative certified that "[t]he dollar amount for which forgiveness is requested . . . was used to pay business costs that are eligible for forgiveness," and that the information provided in the application was true in all material respects.

45. On October 29, 2021, the SBA granted Core Gravity partial forgiveness of the First PPP Loan and issued payment to the lender in the amount of $446,223.55 in principal. Core Gravity subsequently repaid, between December 2021 and August 2022, the unforgiven amount— i.e., $514,176.45—on the First PPP Loan.

46. On March 25, 2022, TCC International sought full forgiveness on the Second PPP Loan. In the forgiveness application, TCC International's Authorized Representative certified that "[t]he dollar amount for which forgiveness is requested . . . was used to pay business costs that are eligible for forgiveness," and that the information provided in the application was true in all material respects. On April 1, 2022, the SBA granted Core Gravity full forgiveness on the Second PPP Loan and issued payment to the lender in the amount of $1,344,675.50 in principal.

47. The PPP Defendants knowingly made misrepresentations in their PPP loan applications and forgiveness applications that resulted in them receiving PPP loan funds despite not being eligible for those funds. Specifically, the PPP Defendants intended to use, and did in fact use, the loan proceeds for the improper purpose of paying the salary of employees who provided services to Core Club 55th, which was a members-only club and an affiliate of the PPP Defendants.

48. Accordingly, the PPP Defendants misrepresented in their PPP applications that they were eligible for PPP loans when, in fact, they were not, and falsely certified in their loan forgiveness applications that the funds were used to pay eligible business expenses and that the information provided in their loan applications was true and correct in all material respects.

II. **Core Club Members Corp. Submitted an Application for an RRF Grant Despite Not Qualifying for that Grant**

49. On May 6, 2021, Core Club Members Corp., a New York not-for-profit corporation that held the liquor license for Core Club 55th during the Covered Period, submitted an application to the SBA to obtain a grant in the amount of $2,303,687.00 through the RRF.

50. In the application for the RRF grant (SBA Form 3172), Core Club Members Corp.'s Authorized Representative certified, among other things, that Core Club Members Corp. was eligible for funding, that the funds would be used in accordance with the RRF Rules, and that the information provided in the application was true in all material respects.

51.     As described above, in order to be eligible for an RRF grant, an applicant needed to be a for-profit company that served food or drinks to the public and on-site sales to the public comprised at least 33 percent of the applicant's gross receipts in 2019. However, Core Club Members Corp., was a not-for-profit company and neither Core Club Members Corp., nor Core Club 55th, served food or drink to the public during the Covered Period, including at the time Core Club Members Corp. applied for the RRF grant. That is, during the Covered Period, Core Club 55th's facilities, including its restaurant and bar, were open only to club members and their guests.

52.     Accordingly, Core Club Members Corp. knowingly made misrepresentations in its RRF grant application that resulted in it receiving RRF grant funds despite being ineligible for those funds. Specifically, Core Club Members Corp. was not eligible for its RRF grant, both because it was a not-for-profit company, and because none of its gross receipts in 2019 were derived from on-site sales to the public—far less than the 33 percent threshold required for eligibility in the RRF program.

## FIRST CLAIM
### Violations of the False Claims Act: Presenting False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))

53.     The Government incorporates by reference each of the preceding paragraphs as if fully set forth herein.

54.     Through the acts set forth above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, the PPP Defendants requested, received, and obtained forgiveness for PPP loans, and Core Club Members Corp. requested and received an RRF grant, by making material misrepresentations in PPP loan and forgiveness applications and an RRF grant application.

55.     Defendants presented or caused to be presented these claims with actual knowledge

of their falsity, or in deliberate ignorance or reckless disregard of whether or not they were false.

56. By reason of these false or fraudulent claims, the Government has been damaged in a substantial amount to be determined at trial, and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## SECOND CLAIM
### Violations of the False Claims Act: Use of False Statements (31 U.S.C. § 3729(a)(1)(B))

57. The Government incorporates by reference each of the preceding paragraphs as if fully set forth herein.

58. Through the acts set forth above, Defendants made and used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by the SBA in violation of 31 U.S.C. § 3729(a)(1)(B). These false records and statements included the misrepresentations by the PPP Defendants in the PPP loan applications and loan forgiveness applications, and in Core Club Members Corp.'s RRF grant application, and the false certifications in these applications.

59. Defendants made, used, or caused to be made and used, these false records and statements with actual knowledge of their falsity, or in deliberate ignorance or reckless disregard of whether or not they were false.

60. By reason of the false records or statements, the Government has been damaged in a substantial amount to be determined at trial, and is entitled to recover treble damages plus a civil monetary penalty for each violation.

## THIRD CLAIM
### Payment by Mistake of Fact

61. The Government incorporates by reference each of the preceding paragraphs as if fully set forth herein.

15

62. The Government seeks relief against Defendants to recover monies paid under mistake of fact.

63. The lenders acting on behalf of the SBA, the SBA, and the United States made payments based on the mistaken and erroneous belief that the PPP loan and RRF grant applications included accurate information and complied with program rules. The PPP loans were also forgiven based on the mistaken and erroneous belief that the PPP loan forgiveness applications included accurate information and complied with PPP Rules.

64. By reason of the foregoing, the Government has sustained damages in a substantial amount to be determined at trial.

## FOURTH CLAIM
### Unjust Enrichment

65. The Government incorporates by reference each of the preceding paragraphs as if fully set forth herein.

66. Through the acts set forth above, the PPP Defendants received PPP funds to which they were not entitled and Core Club Members Corp. received RRF funds to which it was not entitled, and therefore were unjustly enriched. The circumstances are such that, in equity and good conscience, Defendants should not retain those payments, the amount of which is to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Government respectfully requests that judgment be entered in its favor against Defendants as follows:

(a) On the First and Second Claims (FCA violations), for a sum equal to treble damages and civil penalties to the maximum amount allowed by law;

(b) On the Third and Fourth Claims (Payment by Mistake of Fact and Unjust

16

Enrichment), a sum equal to the damages to the extent allowed by law; and

(c)     Granting the Government costs and such further relief as the Court may deem proper.

Dated:   New York, New York
         August 11, 2025

                                        JAY CLAYTON
                                        United States Attorney for the
                                        Southern District of New York

                                  By:   /s/ Jessica F. Rosenbaum
                                        JESSICA F. ROSENBAUM
                                        Assistant United States Attorney
                                        86 Chambers Street, Third Floor
                                        New York, New York 10007
                                        Tel: (212) 637-2777